JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Jose Rodriguez,<br><br>                    Plaintiff,<br><br>        v.<br><br>Shen Zhen New World I LLC,<br><br><br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CV 13-02959-RSWL (JCGx)

**ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION** [18]

Currently before the Court is Defendant Shen Zhen New World I LLC's ("Defendant") Motion to Compel Arbitration [18].  The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS**:

The Court **GRANTS** Defendant's Motion.

## I.   BACKGROUND

Plaintiff Jose Rodriguez ("Plaintiff") is a citizen of California and resides in Los Angeles.  Compl. ¶ 6.

1  Defendant is a California limited liability company

2  with its principal place of business in San Marino,

3  California.  Id. at ¶ 7.  Defendant owns the Marriot

4  Hotel ("Hotel") in downtown Los Angeles.  Clarke Decl.

5  ¶ 5.

6      Defendant entered into a Hotel Management Agreement

7  with RIM Corporation ("RIM"), effective June 28, 2010,

8  which provided that the Hotel would be managed by RIM.

9  Clarke Decl. ¶ 5.  Pursuant to the Hotel Management

10  Agreement between Defendant and RIM, RIM was authorized

11  to hire, supervise, and discharge Hotel employees.  Id.

12  at ¶ 6, Ex. 1 at § 1, ¶ 1.1b.  At about the same time

13  that Defendant and RIM executed the Hotel Management

14  Agreement, Plaintiff and RIM entered into an individual

15  written Agreement for Binding Arbitration ("Arbitration

16  Agreement[1]") which Plaintiff executed on June 22, 2010.

17  Id. at ¶ 13.

18      Plaintiff began working as an employee in

19  _____

20      [1] The Arbitration Agreement at issue states, in relevant
part that:

21      "In the event of any dispute arising under or involving
    any provision of this Employee Handbook, or any dispute

22    regarding Employee's employment with the Company, its
    officers, directors, employees, and/or agents

23    (hereinafter collectively the Company), including but
    not limited to demotion, discipline or termination

24    claims, and/or unlawful discrimination and/or unlawful
    harassment claims . . . the Company and Employee agree

25    to submit said dispute to binding arbitration;
    provided, however, that either party may file a request

26    with a court of competent jurisdiction for equitable
    relief, including but not limited to injunctive relief,

27    pending resolution of any dispute through the
    arbitration set forth herein."

28  Vogel Decl., Ex. 1.

housekeeping at the Hotel in or around July 2007.
Compl. ¶ 13.   From 2009 to April 2012, Plaintiff was a
member of the UNITE HERE! LOCAL 11 union ("Union").
Id. at ¶ 14.   The terms and conditions of employment
were encompassed in a collective bargaining agreement
("CBA") between the Union and Defendant.   Clarke Decl.
¶ 10.   From around 2010 to April 2012, Plaintiff was a
Shop Steward for the Union.   Id. at ¶ 15.

On or about March 17, 2012, Plaintiff went to the
Hotel to begin work on his regular shift.   Compl. ¶ 19.
However, on that day, the Front Desk Manager, Fernando
Chavez, accused him of sexual harassment of a female
union member named Sandra, who was also employed in the
housekeeping department at the Hotel.   Id. at ¶¶ 18-19.
Plaintiff denies that he ever sexually harassed Sandra
or any other individual employed at the Hotel.   Id. at
¶ 19.

Plaintiff believes that Defendant did not act in
good faith in deciding to terminate Plaintiff, that
Defendant's decision to terminate Plaintiff did not
follow an adequate investigation, and that Defendant
did not have reasonable grounds for believing that the
sexual harassment accusations against Plaintiff were
true.   Id. at ¶ 25.

On March 13, 2013, Plaintiff filed this Action in
state court against Defendant alleging claims for
wrongful termination in violation of public policy;
violations of the California Fair Employment and

Housing Act; breach of contract; breach of the implied
covenant of good faith and fair dealing; intentional
and negligent infliction of emotional distress,
negligence, and violation of the California Labor Code
§ 226 [1].  Defendant removed this Action to this Court
on April 29, 2013.

Defendant filed the present Motion to Compel
Arbitration on February 4, 2014 [18].  The matter was
taken under submission on February 27, 2014 [23].

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a
"written provision in any . . . contract evidencing a
transaction involving commerce to settle by arbitration
a controversy thereafter arising out of such contract
or transaction . . . shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or
in equity for the revocation of any contract."  9
U.S.C. § 2.  As explained by the U.S. Supreme Court in
Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218
(1984), "the Act leaves no place for the exercise of
discretion by a district court, but instead mandates
that district courts shall direct the parties to
proceed to arbitration on issues as to which an
arbitration agreement has been signed. . . [.]"

Therefore, the FAA establishes a federal policy
favoring arbitration of disputes and creates a rule of
contract construction favoring such arbitration.  See
Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20,

4

24-25 (1991) (FAA manifests a "liberal federal policy favoring arbitration agreements"); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 1996).  The Act's purpose is to encourage arbitration and to permit parties who have agreed to arbitrate disputes to proceed without court-imposed delay.

In ruling on an application or petition to compel, the court may inquire only as to whether: (1) there is an agreement to arbitrate; (2) there are arbitrable claims; and (3) there has been a waiver of the right to arbitrate by the moving party or other defense to arbitration.  See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

### III.  ANALYSIS

### A.  Parties' Evidentiary Objections

As a preliminary matter, the Court makes the following rulings on the evidentiary objections filed by the Parties.

1. Plaintiff's Evidentiary Objections to Defendant's Declarations

| Objection No. 1 | **SUSTAINED** |
|---|---|
| Objection No. 2 | **OVERRULED** |
| Objection No. 3 | **OVERRULED** |

| Objection No. 4 | **SUSTAINED** as to statement that Defendant was RIM's authorized agent, as a proper foundation has not been laid for how Wieglus has personal knowledge as to this purported agency relationship and this constitutes an improper legal conclusion. **OVERRULED** as to the statement that RIM and Defendant managed the hotel consistent with the Hotel Management Agreement between RIM and Defendant because this statement is not hearsay, and the Hotel Management Agreement was properly authenticated by Greg Clarke, the Managing Director of Defendant. <u>See</u> Clarke Decl. ¶¶ 1, 5. |
|---|---|
| Objection No. 5 | **OVERRULED** |
| Objection No. 6 | **OVERRULED** |
| Objection No. 7 | **SUSTAINED** |
| Objection No. 8 | **SUSTAINED** |
| Objection No. 9 | **OVERRULED** |
| Objection No. 10 | **SUSTAINED** |

2.   <u>Defendant's Evidentiary Objections to Plaintiff's Declarations</u>

| Objection No. 1 | **OVERRULED** |
|---|---|
| Objection No. 2 | **OVERRULED** |
| Objection No. 3 | **OVERRULED** |
| Objection No. 4 | **OVERRULED** |

**B.   <u>Defendant's Motion to Compel Arbitration</u>**

    1.   <u>There is an Agreement to Arbitrate</u>

      Plaintiff argues that there was a lack of voluntary assent to the Arbitration Agreement because Plaintiff was told to sign the Arbitration Agreement or risk unemployment.   However, the Court finds this argument unpersuasive.

      Comment b to Section 23 of the Second Restatement of Contracts clearly sets forth that "where an offer is contained in a writing . . . the offeree may, without reading the writing, manifest assent to it and bind himself without knowing its terms."   Thus, "a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it."   <u>Operating Engineers Pension Trust v. Gilliam</u>, 737 F.2d 1501, 1504 (9th Cir. 1984).

      Here, it is clear that Plaintiff signed the disputed Arbitration Agreement, even though he contends that the Arbitration Agreement was provided to him in English even though his native language is Spanish. <u>See</u> Rodriguez Decl. ¶ 9.   By signing the Arbitration Agreement, Plaintiff manifested assent to its terms, even if he did not know or understand what it was that he was signing.   Notwithstanding Plaintiff's protest that the Arbitration Agreement was only provided to him in English, Plaintiff does not contend that his respective signature was a forgery or otherwise an

1  inaccurate reflection of his assent to the terms
2  contained therein.   Accordingly, the Court finds that
3  there is an agreement to arbitrate.

4     2.   <u>There are Arbitrable Claims</u>

5     The Court must decide whether the dispute is
6  arbitrable, that is, whether it falls within the scope
7  of the Parties' agreement to arbitrate.   <u>See</u> <u>Chiron</u>,
8  207 F.3d at 1131.   In so doing, the Court is cognizant
9  of the FAA's federal policy favoring arbitration
10 agreements:

11     The Arbitration Act establishes that, as a
12     matter of federal law, any doubts concerning
13     the scope of arbitrable issues should be
14     resolved in favor of arbitration, whether the
15     problem at hand is the construction of the
16     contract language itself or an allegation of
17     waiver, delay, or a like defense to
18     arbitrability.
19 <u>Id.</u> (citing <u>Moses H. Cone Memorial Hosp. v. Mercury</u>
20 <u>Const. Corp.</u>, 460 U.S. 1, 24-25).

21     The record here leaves little doubt that the
22 dispute is arbitrable.   The arbitration clause is broad
23 and far-reaching, stating, in relevant part:

24     "In the event of any dispute arising under or
25     involving any provision of this Employee
26     Handbook, or any dispute regarding Employee's
27     employment with the Company, its officers,
28     directors, employees, and/or agents

1    (hereinafter collectively, the Company),
2    including but not limited to demotion,
3    discipline, or termination claims, and/or
4    unlawful discrimination and/or unlawful
5    harassment claims, . . . the Company and
6    Employee agree to submit said dispute to
7    binding arbitration . . ."
8  Vogel Decl. ¶ 7, Ex. 1.
9       In general terms, the current dispute centers on
10 whether Defendant wrongfully suspended and terminated
11 Plaintiff from his position as a housekeeping employee
12 at the Hotel, which was owned by Defendant.
13 Accordingly, as the dispute arises out of or relates to
14 Plaintiff's employment with the Hotel, the Court finds
15 that the dispute falls within the Arbitration
16 Agreement.
17      3.   <u>There Has Been No Waiver of the Right to</u>
18           <u>Arbitrate by the Moving Party and There Are No</u>
19           <u>Other Defenses to Arbitration</u>
20           a.   *Waiver*
21      "A party seeking to prove waiver of a right to
22 arbitration must demonstrate: (1) knowledge of an
23 existing right to compel arbitration; (2) acts
24 inconsistent with that existing right; and (3)
25 prejudice to the party opposing arbitration resulting
26 from such inconsistent acts." <u>Van Ness Townhouses v.</u>
27 <u>Mar Industries Corp.</u>, 862 F.2d 754, 758 (9th Cir. 1988)
28 (citing <u>Fisher v. A.G. Becker Paribas Inc.</u>, 791 F.2d

691, 694 (9th Cir. 1986)).  However, waiver of the right to arbitration is disfavored because it is a contractual right, and thus "any party arguing waiver of arbitration bears a heavy burden of proof."  Id. (citing Fisher, 791 F.2d at 694).

The first factor, knowledge of party's right to arbitrate, is present here since Defendant has admitted knowledge.  See Clarke Decl. ¶ 13.

The second factor, acting inconsistently with that existing right, does not seem to be satisfied here.  In Van Ness, the Ninth Circuit found that a defendant implicitly waived arbitration of certain claims because he acted inconsistently with his known existing right to arbitrate those claims.  862 F.2d at 759.  The court noted that defendant chose to actively litigate the entire matter — including pleadings, motions, and approving a pre-trial conference order — and did not move to compel arbitration until more than two years after the appellants brought the action.  Id.  In contrast, here, although Defendant has pursued litigation for ten months before seeking arbitration, it does not appear that it has engaged in affirmative substantive discovery.  Although Plaintiff cites to his own discovery efforts, waiver focuses on the actions of the party charged with waiver.  See Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1125 (9th Cir. 2008). Plaintiff fails to indicate what discovery, if any, Defendant has pursued.  Further, unlike the defendant

10

in Van Ness, Defendant has not actively litigated this
Action; for example, Defendant has not lodged any
substantive pleadings or motions and, unlike the
defendant in Van Ness, Defendant here has not approved
a pre-trial conference order. See Van Ness, 862 F.2d
at 759.  The Court notes that Defendant has not
requested arbitration close to the trial date, as the
trial for this Action is currently set for August 19,
2014.  Defendant also explains that it only recently
learned of the existence of the Arbitration Agreement.
Thus, the Court finds that the second factor, acting
inconsistently with that existing right, is not
satisfied here.

The last factor, prejudice to Plaintiff, is also
not clearly satisfied.  Under California law, "courts
will not find prejudice where the party opposing
arbitration shows only that it incurred court costs and
legal expenses." Quevedo v. Macy's, Inc., 798 F. Supp.
2d 1122, 1132 (C.D. Cal. 2011) (citing St. Agnes Med.
Ctr., 8 Cal. Rptr. 3d 517).  Rather, "[p]rejudice
typically is found only where the petitioning party's
conduct has substantially undermined th[e] important
public policy [in favor of arbitration as a speedy and
relatively inexpensive means of dispute resolution] or
substantially impaired the other side's ability to take
advantage of the benefits and efficiencies of
arbitration." Id.  Thus, for example, prejudice exists
"where the petitioning party used the judicial

11

discovery processes to gain information about the other side's case that could not have been gained in arbitration; where a party unduly delayed and waited until the eve of trial to seek arbitration; or where the lengthy delays associated with the petitioning party's attempts to litigate resulted in lost evidence." Id. (citing St. Agnes (citations omitted)). None of those situations appears to be the case here. In Quevado, the court found that a plaintiff had not shown prejudice of this sort, reasoning, in part, that the defendant had not propounded any discovery requests and thus has not unfairly gained information it could not have gained in arbitration. Id. Here, while it is true that Plaintiff has likely accrued significant costs in litigating this case for the months that Defendant delayed in asserting its right to compel arbitration, Plaintiff fails to indicate how this delay has prejudiced him. As such, the Court finds that Defendant has not waived its right to arbitrate.

Plaintiff also argues that Defendant has waived its entitlement to arbitration because it cited the incorrect arbitration agreement in asserting arbitration as an affirmative defense in its Answer to the Complaint. However, failure to raise the right to arbitrate as an affirmative defense is not sufficient, absent a showing of prejudice, to establish waiver. Britton v. Co-op Banking Group, 916 F.2d 1405, 1413 (9th Cir. 1990); see also Magana v. Com. of the

1  <u>Northern Mariana Islands</u>, 107 F.3d 1436, 1446 (9th Cir.

2  1997).  As discussed above, a showing of prejudice is

3  absent in this case, and as such, any failure of

4  Defendant to raise arbitration as an affirmative

5  defense in insufficient to establish waiver.

6              b.  *Standing*

7      General contract and agency principles apply in

8  determining the enforcement of an arbitration agreement

9  by or against nonsignatories.  <u>Mundi v. Union Sec. Life</u>

10  <u>Ins. Co.</u>, 555 F.3d 1042, 1045 (9th Cir. 2009).  Among

11  these principles are: (1) incorporation by reference;

12  (2) assumption; (3) agency; (4) veil-piercing/alter

13  ego; and (5) estoppel.  <u>Id.</u>

14       The right to compel arbitration derives from a

15  contractual right, and one who is not a party to a

16  contract has no standing to compel arbitration.

17  <u>Britton v. Co-Op Banking Group</u>, 916 F.2d 1405, 1413

18  (9th Cir. 1990) (citing <u>Lorber Industries v. Los</u>

19  <u>Angeles Printworks Corp.</u>, 803 F.2d 523 (9th Cir.

20  1986)).  However, a third party beneficiary or an agent

21  of one of the parties to the contract may have standing

22  to compel arbitration.  <u>Britton</u>, 916 F.2d at 1413.

23      Generally, "as a matter of federal law, any doubts

24  concerning the scope of arbitrable issues should be

25  resolved in favor of arbitration[.]"  <u>Rajagopalan v.</u>

26  <u>NoteWorld, LLC</u>, 718 F.3d 844, 846-47 (9th Cir. 2013)

27  (citing <u>Moses H. Cone Mem'l Hosp. v. Mercury Const.</u>

28  <u>Corp.</u>, 460 U.S. 1, 24-25, (1983).  However, "[t]he

question here is not whether a particular issue is arbitrable, but whether a particular party is bound by the arbitration agreement.   Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite." Id. (citing Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)).

## 1.   Equitable Estoppel

"Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes.'" Mundi, 555 F.3d at 1045 (citing Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006)).

Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128-29 (9th Cir. 2013) (citing Goldman v. KPMG LLP, 173 Cal. App. 4th 209, 219, 221 (2009)).

14

1    Thus, under California law, in order for a
2 nonsignatory to compel a signatory to arbitrate, the
3 signatory's claims must be "intertwined with," "arise
4 out of," or "relate directly to" the contract providing
5 for arbitration.  Kramer, 705 F.3d at 1130 n.5 (citing
6 Mundi, 555 F.3d at 1047).
7    Here, the Court finds that application of equitable
8 estoppel is justified with respect to all of the claims
9 asserted in the Complaint.  All of Plaintiff's claims
10 relate to his employment at the Hotel as they concern
11 his termination from the Hotel.  All of the employment-
12 related claims asserted are directly intertwined with
13 this employment with RIM and his binding obligation to
14 arbitrate those claims consistent with the individual
15 arbitration agreement with RIM.  Further, as to the
16 "intertwining" of the claims, Plaintiff has contended
17 that its employment-related claims against Defendant
18 arise from the actions taken by RIM in firing
19 Plaintiff.  Thus, having agreed to arbitrate any claim
20 growing out of his relationship with RIM, and having
21 made a claim arising from that contractual relationship
22 against Defendant, Plaintiff is estopped from refusing
23 to arbitrate against Defendant.  As such, the Court
24 finds that Defendant has standing to enforce the
25 Arbitration Agreement.
26              c.  *The Arbitration Agreement Was Not So*
27                  *Unclear and Unambiguous that it Should Not*
28                  *Be Enforced*

Plaintiff argues that there are key terms of the Arbitration Agreement that are too uncertain, unclear, and ambiguous to be enforceable.  Opp'n 10:21-22. Plaintiff specifically points that the Arbitration Agreement covers employment with "Company, its officers, directors, employees, and/or agents" but it does not state the name of any Company.  Id. at 10:25-28.  Plaintiff also points out that RIM is not the "Company" referenced in the Arbitration Agreement, as Plaintiff signed the Arbitration Agreement on June 22, 2010, and Defendant and RIM did not enter into the Hotel Management Agreement for the Marriot until June 28, 2010.  Opp'n 11:11-15.  Plaintiff also points out that the Arbitration Agreement references disputes involving an "Employee Handbook" but it is unclear which, whose, or what Employee Handbook is being referenced and for what time period.  Id. at 11:18-20.

Although Plaintiff is correct that the Arbitration Agreement does not define who the "Company" is, it appears that Plaintiff was given the Arbitration Agreement while he was employed at RIM by RIM's human resources manager at the same time he was also given a copy of RIM's employee handbook referenced in the first sentence of the Arbitration Agreement.  Suppl Decl. Wieglus ¶ 4.  Thus, the Court finds that the "Company" referenced in the Arbitration Agreement is not so uncertain or unclear as to render the Arbitration Agreement unenforceable.  Rather, the circumstances

1  under which Plaintiff received the Arbitration
2  Agreement - *i.e.*, that Plaintiff was given the
3  Arbitration Agreement by RIM's human resources manager
4  at the same time he was given a copy of RIM's employee
5  handbook - indicate that RIM was the company referenced
6  in the Arbitration Agreement.

7      Although it is true that Plaintiff signed the
8  Arbitration Agreement on June 22, 2010, and Defendant
9  and RIM did not enter in the Hotel Management Agreement
10 for the Hotel until June 28, 2010, this fails to
11 support Plaintiff's contention that the Company
12 referenced in the Arbitration Agreement is not RIM.
13 This is because on May 27, 2010, RIM and Defendant
14 signed an Interim Services Agreement addressing the
15 interim management of the Hotel.  Suppl. Wieglus Decl.
16 ¶ 6.  The Parties appeared to enter into this short
17 term Interim Services Agreement while the final terms
18 of a management agreement were being negotiated and
19 agreed upon.  Id. at ¶ 6.  The Interim Services
20 Agreement remained in effect until RIM and Defendant
21 signed the Hotel Management Agreement on June 21, 2010,
22 which took effect on June 28, 2010.  As such, the
23 Interim Services Agreement was in effect when Plaintiff
24 signed the Arbitration Agreement on June 22, 2010.  Id.
25 at ¶ 7.  Because the Interim Services Agreement between
26 RIM and Defendant was in effect at the time Plaintiff
27 signed the Arbitration Agreement, the Court finds that
28 the "Company" referenced in the Arbitration Agreement

was RIM.  Accordingly, the Court finds that Plaintiff's argument that the Arbitration Agreement was unclear and unambiguous is without merit.

### d.  *Unconscionability*

Plaintiff argues that the Arbitration Agreement is unenforceable because it is both procedurally and substantively unconscionable.

It is well settled that "arbitration is a matter of contract." <u>United Steelworkers of America v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1960).  As such, arbitration agreements are subject to contract defenses.  <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1170 (9th Cir. 2003).  In evaluating the validity of an arbitration agreement, the Court "should apply ordinary state-law principles that govern the formation of contracts." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).

In California, unconscionability is a contract defense defined as "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486 (1982).  Thus, a contract to arbitrate is unenforceable in California under the doctrine of unconscionability when there are both procedural and substantive elements of unconscionability.  <u>Ferguson v. Countrywide Credit Indus.</u>, Inc., 298 F.3d 778, 782 (9th Cir. 2002) (<u>Armendariz v. Found. Health Psychcare</u>

Servs., Inc., 24 Cal. 4th 83, 114 (Cal. 2000)).  These
two elements, however, need not both be present in the
same degree.  Ferguson, 298 F.3d at 783.  For example,
"the more substantively oppressive the contract term,
the less evidence of procedural unconscionability is
required to come to the conclusion that the term is
unenforceable, and vice versa.  Id. (quoting
Armendariz, 24 Cal. 4th at 114).

                    1.  Substantive unconscionability

     In determining substantive unconscionability, the
Court must decide whether the agreement terms "are so
one-sided as to shock the conscience."  Kinney v.
United Healthcare Servs., Inc., 70 Cal. App. 4th 1322,
1330 (1999).  For example, courts have found
arbitration clauses unconscionable when they impose
arbitration on one party, giving the other the option
of taking their claims to court.  See, e.g., Ingle, 328
F.3d at 1173, 74.  Similarly, courts have deemed
arbitration clauses to be one-sided when they apply
only to claims that would typically be brought by the
"weaker party."  See e.g., Ting v. AT&T, 319 F.3d 1126
(9th Cir. 2003).

     Plaintiff argues that the Arbitration Agreement is
substantively unconscionable, as it compels arbitration
of claims employees are most likely to bring against
the employer, and exempts from arbitration claims the
employer is most likely to bring against its employees.
Opp'n 19:8-12.  Plaintiff points to language in the

Arbitration Agreement, which states that: "the Company
and Employee agree to submit said dispute to binding
arbitration," but that "either party may file a request
with a court of competent jurisdiction for equitable
relief, including but not limited to injunctive
relief."  Dkt. 18-3 at 6.  Plaintiff further avers that
the Arbitration Agreement is substantively
unconscionable, as the Arbitration Agreement seeks to
require the filing of an arbitration prior to the
statute of limitations of any applicable claims.  Id.
at 19:19-21.

     Here, Plaintiff has not persuasively shown that
this Arbitration Agreement is substantively
unconscionable.  First, Plaintiff has not sufficiently
shown that the Arbitration Agreement is one-sided.
Plaintiff attempts to analogize this case to Mercuro v.
Superior Court, in which the court held that the
arbitration agreement at issue was unfairly one-sided
in requiring arbitration of most claims of interest to
employees but exempting from arbitration most claims of
interest to the employer.  96 Cal. App. 4th 167, 175
(2002).  In Mercuro, the arbitration agreement
specifically covered claims for breach of express or
implied contracts or covenants, tort claims, claims of
discrimination based on race, sex, age or disability,
and claims for violation of any federal, state, or
other governmental constitution, statute ordinance,
regulation or public policy.  Id. at 175-76.  On the

other hand, the arbitration agreement in <u>Mercuro</u> specifically excluded "claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information . . ." <u>Id.</u> at 176.  The court recognized that the agreement exempts from arbitration the claims the employer was most likely to bring against its employees.  <u>Id.</u>

Here, however, the Arbitration Agreement does not explicitly delineate the claims that are covered under the Arbitration Agreement; indeed, the Arbitration Agreement states that "in the event of any dispute arising under or involving any provisions of this Employee Handbook, or any dispute regarding Employee's employment with the Company . . . the Company and Employee agree to submit said dispute to binding arbitration." Dkt. 18-3.  Thus, under the terms of the Arbitration Agreement, both Parties expressly agreed that all claims arising under or involving any provision of the Employee Handbook be arbitrated.  This is bilateral and facially neutral because each side is bound to pursue potential claims against the other by arbitration, and therefore it does not exclude Defendant from liability here or prevent Plaintiff from bringing any of his claims.

Additionally, here, there contains no provision that any claims for injunctive or equitable relief are

excluded.  Rather, the Arbitration Agreement merely contains a provision that "either party may file a request with a court of competent jurisdiction for equitable relief, including but not limited to injunctive relief, pending resolution of any dispute through the arbitration procedure set forth herein." Dkt. 18-3.  Therefore, the Court finds that the Arbitration Agreement is not one sided in the sense that it does not preclude either party from requiring that the merits of any action be arbitrated.

Furthermore, although Plaintiff argues that the Arbitration Agreement is substantively unconscionable, as the Arbitration Agreement seeks to require the filing of an arbitration prior to the statute of limitations of any applicable claims, the Court finds this argument similarly unpersuasive.  Plaintiff specifically references a part of the Arbitration Agreement which reads: "[t]he Company and Employee agree to submit any such dispute to binding arbitration . . . within one year of the date the dispute first arose, or within one year of the termination of employment."  Dkt. 18-3.  However, Defendant has pointed out that claims are to be submitted to binding arbitration within one year of the date the dispute first arose or within one year of the termination of employment, "provided, however, that if the Employee's claim arises under a statute providing for a longer time to file a claim, that statute shall govern."  Id.

Thus, Plaintiff's argument that the Arbitration Agreement is substantially unconscionable on this ground is without merit, as the Arbitration Agreement does not necessarily require the filing of an arbitration prior to the statute of limitations of any applicable claims.

As the Court finds that the Arbitration Agreement is not substantively unconscionable, the Court need not address whether the Arbitration Agreement is procedurally unconscionable.  See Armendariz, 24 Cal. 4th at 114 (noting that both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce a contract as unconscionable).

In sum, the Court finds that there is an agreement to arbitrate, there are arbitrable claims, there has been no waiver of the right to arbitrate by Defendant, and that no other defense to arbitration is present. As such, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **DISMISSES** this Action **without prejudice.**

//

//

//

//

//

//

//

23

# IV.   CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **DISMISSES** this Action **without prejudice.**


**IT IS SO ORDERED.**

DATED: March 6, 2014

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge